**Lauri SMITH and Howard Smith, Appellants,**

v.

**PATRICK W.Y. TAM TRUST, Appellee.**

No. 05–06–00356–CV.

Court of Appeals of Texas, Dallas.

July 31, 2007.

Rehearing Overruled Oct. 11, 2007.

Robert D. Ranen, Gunter, TX, for Appellant.

Scott E. Hayes, Vincent Moye, P.C., Michael Wayne Massiatte, Vial, Hamilton, Koch & Knox, L.L.P., Dallas, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice WHITTINGTON.

Lauri Smith and Howard Smith appeal the trial court's judgment rendering verdict in favor of Patrick W.Y. Tam Trust as to damages and awarding the Trust $7500 in attorney's fees. In two issues, the Smiths contend (i) the evidence was legally insufficient to support the Trust's claims that the Smiths were individual guarantors on the commercial lease at issue in this case and (ii) the trial judge erred in allowing the Trust to file an amended petition on the day of trial. The Trust filed a cross-appeal, claiming the trial judge abused his discretion in ignoring uncontroverted evidence of the amount of attorney's fees and awarding "an arbitrary amount." We vacate the $7500 award of attorney's fees and award the Trust attorney's fees of $47,438.75. In all other respects, we affirm the trial court's judgment.

## Background

The Trust owns a shopping center in Collin County. In November 2002, the Trust entered into a five-year lease agreement with Independent Quality Wholesale, Inc. ("IQW") d/b/a Plano Pets & Grooming. The Smiths each signed a guaranty of the lease. When Plano Pets stopped making payments, the Trust sued Plano Pets and the Smiths. The Trust later filed a motion to nonsuit Plano Pets after the company filed bankruptcy.

The Smiths filed counterclaims, alleging the Trust breached its lease agreement, interfered with their right to quiet enjoyment, and tortiously interfered with their business. The Trust filed a motion for summary judgment on the ground the Smiths were guarantors and, as such, lacked standing to assert these claims. The trial judge agreed and granted partial summary judgment in favor of the Trust. The case proceeded to trial. During a pretrial hearing on the morning of trial, the Smiths orally argued the Trust had not sued them as guarantors. The trial judge agreed but noted "everybody" had known throughout the course of the lawsuit that the Trust's suit was on the Smiths' guaranties. He therefore granted the Trust's request for leave of court to file a trial amendment.

At the conclusion of the trial, the jury found the Smiths individually liable as guarantors and awarded the Trust $65,000 in damages but did not award the Trust attorney's fees. The Smiths filed a motion for new trial alleging the evidence was legally insufficient to support the jury's finding that the Smiths were individually liable and the damages award. The Trust then filed a motion to enter judgment on the jury's answers regarding liability and damages and to disregard the jury's answer on attorney's fees. The trial judge entered judgment in favor of the Trust, awarded $65,000 in damages and $7500 in attorney's fees. The Smiths filed their appeal, and the Trust filed its cross-appeal.

## Sufficiency of the Evidence

In their first issue, the Smiths argue the evidence is legally insufficient to support

the Trust's claim that Lauri and Howard were individual guarantors on the lease. Under this issue, the Smiths contend the evidence established the Smiths did not sign in their individual capacities because (i) the guaranty indicated it was a "corporate guaranty," (ii) the Trust looked solely to the business for financial security, (iii) the signature line on the guaranty had spaces for a signing party's "title," and (iv) the Smiths signed in their corporate capacities.

When a party attacks the legal sufficiency of an adverse finding on an issue it did not have the burden to prove at trial, it must demonstrate that there is no evidence to support the adverse finding. *Signal Peak Enters. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 923 (Tex.App.-Dallas 2004, no pet.); *Harris County v. Gibbons*, 150 S.W.3d 877, 881 (Tex.App.-Houston [14th Dist.] 2004, no pet.). Thus, the Smiths have the burden of demonstrating there is no evidence to support the findings that they individually guaranteed the lease. In conducting this review, we consider the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex.2005). If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then jurors must be allowed to do so. *City of Keller*, 168 S.W.3d at 822. A reviewing court cannot substitute its judgment for that of the trier-of-fact, so long as the evidence falls within this zone of reasonable disagreement. *City of Keller*, 168 S.W.3d at 822.

We sustain a challenge to the legal sufficiency of the evidence when the record discloses one of the following: (i) a complete absence of evidence of a vital fact, (ii) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (iii) the evidence offered to prove a vital fact is no more than a mere scintilla, or (iv) the evidence establishes conclusively the opposite of the vital fact. *Signal Peak Enters.*, 138 S.W.3d at 923 (citing *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex.2003)). If there is more than a scintilla of evidence to support the finding, the evidence is legally sufficient to support the trial court's judgment. *Gentry v. Squires Const., Inc.*, 188 S.W.3d 396, 408 (Tex. App.-Dallas 2006, no pet.) (citing *Marathon*, 106 S.W.3d at 727); *see Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex.1996).

■ During trial, James N. Greenfield, director of property management at Cencor Realty Services, testified Cencor manages property for owners of retail properties. The Trust and Cencor signed an agreement for Cencor to manage the shopping center in which Plano Pets was located. Greenfield identified the lease agreement between Plano Pets and the Trust which included the Smiths' guaranties. The lease agreement with the attached guaranty agreements was admitted without objection as Plaintiff's Exhibit 2. Greenfield testified he was unaware of who drafted the guaranty agreements but was familiar with the documents.

Greenfield believed the guaranties to be personal guaranties and not corporate guaranties. Although the documents did not contain the word "personal," Greenfield noted numerous reasons why the guaranties were personal. The guaranty signed by Lauri begins with the recitation

THIS GUARANTY given by Lauri Smith (herein referred to as "Guarantor") to Patrick W.Y. Tam Trust (herein referred to as "Landlord") . . .

Greenfield testified each guaranty had a signature line for the guarantor. Beneath

the signature line were three lines; the first indicated "By:"; the second indicated "Name"; the third indicated "Title". On Lauri's guaranty, she signed her name "Lauri Smith" on the line marked "Guarantor." Beneath her signature was her typed name (on the line indicated "By:"). The following line indicated "Name" was blank, and on the last line, Lauri wrote, in her handwriting, "Sec/Treasurer." Howard's guaranty similarly began

> THIS GUARANTY given by Howard Smith (herein referred to as "Guarantor") to Patrick W.Y. Tam Trust (herein referred to as "Landlord") . . .

On the signature page, Howard signed his name on the line marked "Guarantor." Beneath his signature was his typed name (on the line indicated "By:"). The remaining lines were left blank. Greenfield explained he believed the guaranties to be personal because the Smiths each signed their names; if the Smiths had been signing in their corporate capacity, the name of the guarantor would be the corporation, followed by each individual's signature, name, and title.

Greenfield further testified that, when a corporation was signing a lease, it was "normal to ask for an individual to guarantee" the lease. His company would not ask for a corporation to guarantee the lease when the same corporation was the lessee. He testified the guaranty documents appeared to be a universal form and that Paragraph 10, which begins with the language, "If Guarantor is a corporation or partnership," did not indicate that the guaranties were written for only corporate guarantors. Rather, he believed the paragraph was a "qualifying statement saying if someone is signing as a corporate officer they have the authority to do that." [1]

---

1. Paragraph 10 provides:

> 10. If Guarantor is a corporation or partnership, Guarantor represents and warrants that: (a) Guarantor is a corporation or partnership duly organized and validly existing in good standing under the laws of the jurisdiction of its incorporation or inception, and it has full power and authority to enter into and perform its obligations under this Guaranty and (b) the execution, delivery and performance by Guarantor of this Guaranty have been duly authorized by all necessary corporate or partnership action on the part of the Guarantor, and are not inconsistent with its certificate of incorporation, bylaws or partnership agreement. Guarantor also represents and warrants that: (i) this Guaranty does not violate any law or governmental rule, regulation or order applicable to Guarantor; (ii) no action with respect to or by any state, federal or governmental authority or agency is required concerning the execution, delivery and performance by Guarantor of this Guaranty; (iii) this Guaranty does not and will not contravene any provision of, or constitute a default under, any indenture, mortgage, contract or other instrument by which Guarantor is bound; (iv) upon execution and delivery of this Guaranty, it will constitute a legal, valid and binding agreement of Guarantor, enforceable in accordance with the terms except as limited by bankruptcy, insolvency or similar laws of general application relating to the enforcement of creditors' rights and as limited by general equitable principles; (v) there are no actions, suits or proceedings pending or to the knowledge of the Guarantor threatened against or affecting Guarantor or any of its property or rights in any court, federal, state or local administrative agency or governmental authority or arbitration board that question the business, results of operations, assets or financial condition of Guarantor or Guarantor's ability to perform its obligations under this Guaranty; (vi) the value of the consideration received and to be received by the Guarantor in connection herewith is reasonably worth at least as much as the liability and obligations of Guarantor hereunder, and the incurrence of such liability and obligations in return for such consideration may reasonably be expected to benefit Guarantor directly or indirectly; (vii) Guarantor is not "insolvent" on the date hereof (that is, the sum of Guarantor's absolute and contingent liabilities, including its obligations under this

Michael Howard Smith, Sr. testified he is the president of IQW. He also goes by the name Howard Smith in order to avoid confusion with his oldest son. When asked about the lease guaranty, Howard testified he signed the document as a corporate guaranty. According to Howard, nothing in the document indicates it is a personal guaranty. He testified he interpreted paragraph 10 of the guaranty as evidence it was a corporate guaranty and signed the document "Howard Smith." According to Howard, he signs "by the name of Michael Smith when it's personal." He noted the guaranty signature line had a place for his title although he conceded he "failed to put my title on here." Howard testified he signed his name on his driver's license "M. Howard Smith." Howard also testified he did not give any personal financial information to the Trust, which furthered his belief he was signing a corporate guaranty. Howard conceded the guaranty stated, "This guaranty given by Howard Smith" and did not reference IQW. He further conceded the lease defined IQW as the tenant and listed Lauri and him as guarantors.

Lauri similarly testified she believed she signed the document as a corporate guaranty and also noted that the document does not contain the word "personal." She testified she entered her corporate title on the signature line because she was signing in her corporate capacity.

The evidence shows the Smiths signed the documents using their names and not the name of the corporation. Each document stated the guaranty was given by the individual to the landlord, and the lease agreement defined each individual as a guarantor. Although Lauri wrote her title below her name, Howard did not. The guaranty language included a conditional paragraph setting forth additional obligations that would arise only *if* the guarantor were a corporation. Thus, there is more than a scintilla of evidence that the Smiths were individual guarantors.

■■■ In reaching this conclusion, we also note that, to conclude the Smiths signed the guaranties in their corporate capacity would render the guaranty meaningless. *See Am. Petrofina Co. of Tex. v. Bryan,* 519 S.W.2d 484, 487 (Tex.Civ.App.-El Paso 1975, no writ) ("This instrument is a collateral undertaking to secure the debt of the corporation and if we were to hold that this is not the obligation of the Appellees we would have to hold that it is not an obligation at all, and we would utterly destroy its effect."); *see also Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252, 263 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (Frost, J., concurring) ("If this court adopted Lopez's construction of the September 25th letter, the agreement would be meaningless." It simply makes no sense for Sacos to be both the account debtor and the "corporate guarantor" because a guarantor is one who stands for the debt of another. MPI would have no reason to request or obtain a guaranty from Sacos for Sacos's own debt.) When construing a written contract, the primary concern is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 229 (Tex.2003); *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,*

Guaranty, does not exceed the fair market value of Guarantor's assets, Guarantor's capital is adequate for the business in which Guarantor is engaged and intends to be engaged and Guarantor has not hereby incurred nor does Guarantor intend to in-

cur or believe that it will incur, debts which will be beyond its ability to pay as such debts mature); and (viii) all credit and financial information submitted to Landlord in connection with this Guaranty is true and correct in all respects.

596 S.W.2d 517, 518 (Tex.1980). To achieve this objective, we should examine and consider the entire contract in order to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker,* 650 S.W.2d at 393 (citing *Universal C.I.T. Credit Corp. v. Daniel,* 150 Tex. 513, 518, 243 S.W.2d 154, 158 (1951)). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker,* 650 S.W.2d at 393 (citing *Myers v. Gulf Coast Minerals Mgmt. Corp.,* 361 S.W.2d 193, 196 (Tex. 1962)). Because concluding that the Smiths signed the guaranties in their corporate capacity would render the guaranty meaningless, we decline to adopt their reasoning and argument.

Crediting all favorable evidence that reasonable jurors could believe and disregarding all contrary evidence except that which they could not ignore, we conclude there is more than a scintilla of evidence that the Smiths individually guaranteed the lease. We overrule the Smiths' first issue.

## Trial Amendment

■ In their second issue, the Smiths contend the trial judge "erred in allowing [the Trust] to amend its pleadings and include a new cause of action on the day of trial." Under this issue, the Smiths also contend the trial judge erred in denying their attempt "to assert the defense of material alteration."

■ Rule 63 of the rules of civil procedure provides that

any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter ... shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX.R. CIV. P. 63. Rule 66 of the rules of civil procedure provides:

If evidence is objected to at the trial on the ground that it is not within the issues made by the pleading, or if during the trial any defect, fault or omission in a pleading, either of form or substance, is called to the attention of the court, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the allowance of such amendment would prejudice him in maintaining his action or defense upon the merits.

TEX.R. CIV. P. 66. A judge may not refuse a trial amendment unless (i) the opposing party presents evidence of surprise or prejudice or (ii) the amendment asserts a new cause of action or defense and thus is prejudicial on its face. *State Bar of Tex. v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.1994) (citing *Greenhalgh v. Serv. Lloyds Ins. Co.,* 787 S.W.2d 938, 939 (Tex.1990)). The burden of showing surprise or prejudice rests on the party resisting the amendment. *Graham v. Adesa Tex., Inc.,* 145 S.W.3d 769, 776 (Tex.App.-Dallas 2004, pet. denied) (citing *Greenhalgh,* 787 S.W.2d at 939). We reverse a trial judge's decision to allow or deny an amendment only if the judge clearly abused his discretion in making his decision. *Kilpatrick,* 874 S.W.2d at 658 (rule 66); *Greenhalgh,* 787 S.W.2d at 939 (rules 63 & 66) *Hardin v. Hardin,* 597 S.W.2d 347, 349–50 (Tex.1980) (rule 63).

During a pretrial hearing on the day of trial, the Smiths questioned whether the Trust's pleadings supported suing the Smiths as guarantors. In response, the Trust argued the pleadings were clear on the grounds of relief sought and, even if

they were not, the Smiths were not surprised. After an on-the-record discussion, the trial judge agreed the pleadings did not indicate the Trust was suing the Smiths on a guaranty. Nevertheless, citing previous rulings and an order on the Trust's partial motion for summary judgment, the judge noted "it's been all along clear to everybody that [the guaranty was] the basis for [the Trust's] lawsuit." When the trial judge asked the Smiths if there was any surprise, they conceded they would be "hard pressed" to argue surprise. Moreover, the Smiths did not argue the amendment was prejudicial.

The record shows (i) the judge stated there was no surprise to any party regarding the basis for the Trust's suit, (ii) the Smiths admitted there was no surprise, and (iii) the Smiths did not argue or put on evidence that the amendment was prejudicial. In light of this, we cannot conclude the trial judge erred in allowing the amendment.[2]

■ In the remainder of their second issue, the Smiths argue they "attempted to show that the underlying contract . . . was materially altered" but that the trial judge refused to allow this defense. The Smiths do not cite this Court to the point in the record where they presented this argument or request to the trial judge, nor do they indicate where in the record the trial judge denied their request. Furthermore,

even assuming their request was made and denied, the Smiths do not indicate where in the record they made an offer of proof of their evidence in support of this argument.

■ The rules of appellate procedure instruct an appealing party to file a brief that includes a statement of facts supported by record references and appropriate citations to the appellate record in support of any argument raised. *See* TEX. R.APP. P. 38.1(d), (f), (g). An appellate court has no duty to search a record without sufficient guidance from an appellant to determine whether an assertion of reversible error is valid. *Barnett v. Coppell North Tex. Court, Ltd.,* 123 S.W.3d 804, 817 (Tex.App.-Dallas 2003, pet. denied); *Dallas Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 237 (Tex.App.-Dallas 2000, pet. denied); *Most Worshipful Prince Hall Grand Lodge v. Jackson,* 732 S.W.2d 407, 412 (Tex.App.-Dallas 1987, writ ref'd. n.r.e.) ("It is not the duty of the court of appeals to make an independent search of the statement of facts."). Because the Smiths do not point this Court to where in the record they sought relief or where the trial judge purportedly erred by denying said relief, they have not met their responsibility to assist this Court is evaluating their contentions.[3] We overrule the Smiths' second issue in its entirety.

2. We also question whether the Smiths preserved this issue. When the Trust offered its trial amendment and the trial judge asked if there was any objection to the order granting the Trust leave to file the amendment, the Smiths replied, "No objection." Thus, it would appear the Smiths ultimately did not object and error, if any, was waived.

3. We also note that each guaranty provided
   5. Any modification, amendment, change or extension of any of the terms, covenants or conditions of the Lease which Tenant and Owner may hereafter make, or any forbearance, delay, neglect or failure on the part of Owner in enforcing any of the Indebtedness or the Obligations, shall not in any way affect, impair or discharge Guarantor's conditional liability to Owner hereunder, nor shall Guarantor's liability hereunder be impaired, affected or discharged by any act done or omitted to be done or by any waiver by either Owner or Tenant, notwithstanding that Guarantor may not have consented thereto or may not have notice or knowledge thereof.
   Under the plain language of the documents, the Smiths guaranteed the lease regardless of

### The Trust's Cross–Appeal

In its cross-appeal, the Trust contends the trial judge abused his discretion in awarding $7500 in attorney's fees. Under this issue, the Trust claims the judge ignored uncontroverted evidence presented at trial and substituted an arbitrary amount in making the award. We agree.

Section 38.001 of the Texas Civil Practice and Remedies Code provides that a party may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for a written contract. TEX. CIV. PRAC. & REM.CODE ANN. § 38.001 (Vernon). A guaranty is construed as any other contract. *Mid–South Telecomms. Co. v. Best,* 184 S.W.3d 386, 390 (Tex.App.-Austin 2006, no pet.). A party seeking to recover attorney's fees carries the burden of proof to establish the amount which is reasonable and necessary. *See Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 10 (Tex.1991) (attorney's fees under Deceptive Trade Practices Act). In awarding attorney's fees, the trial judge must take into account various factors including the nature and complexity of the case, the nature of the services provided by counsel, the time required for trial, the amount of money involved, the client's interest that is at stake, the responsibility imposed upon counsel, and the skill and expertise required. *Ragsdale v. Progressive Voters League,* 801 S.W.2d 880, 881 (Tex.1990). We examine the award of attorney's fees under an abuse of discretion standard; absent an abuse of discretion, we do not reverse the trial judge's decision. *Ragsdale,* 801 S.W.2d at 881.

The testimony of an interested witness, though not contradicted, generally "does no more than raise a fact issue to be determined by the jury." *Ragsdale,* 801 S.W.2d at 882. However, an exception to this rule exists; "where the testimony of an interested witness is not contradicted by any other witness, or attendant circumstances, and the same is clear, direct and positive, and free from contradiction, inaccuracies, and circumstances tending to cast suspicion thereon, it is taken as true, as a matter of law." *Ragsdale,* 801 S.W.2d at 882. This is especially true when, as in this case, "the opposing party has the means and opportunity of disproving the testimony" but fails to do so. *Ragsdale,* 801 S.W.2d at 882.

In this case, the Trust presented uncontradicted evidence in support of its $47,438.75 claim for attorney's fees. The Trust's counsel testified at trial and introduced a twenty-seven page exhibit in support of the fees charged. This evidence was "clear, direct and positive," free from internal contradiction, inaccuracies, and suspicious circumstances. *See Ragsdale,* 801 S.W.2d at 882. The Smiths had ample opportunity to question or challenge the Trust's evidence, including the documentation admitted in support of the attorney's fees claim. The Smiths challenged only whether the testifying attorney was the custodian of the records, an objection which was overruled. The Smiths did not challenge the amount of the fees charged, the nature of the services provided, whether the amount charged accurately reflected the nature and complexity of the case, or any of the other factors discussed by the Texas Supreme Court in the *Ragsdale* opinion. Because the Trust presented competent, uncontroverted evidence of its right to attorney's fees and because the Smiths did not challenge the amount, nature, or necessity of these fees, we conclude the trial judge abused his discretion in awarding $7500.

whether, as they allege, the lease was materially altered.

In reaching this conclusion, we reject the Smiths' argument that the jury was entitled to disregard the uncontroverted evidence and award no attorney's fees. On appeal, we review the record for evidence to support the jury finding while ignoring all evidence to the contrary. *Cale's Clean Scene Carwash, Inc. v. Hubbard,* 76 S.W.3d 784, 786 (Tex.App.-Houston [14th Dist.] 2002, no pet.) (citing *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001)). In this case, the Trust introduced testimony and evidence in support of its $47,438.75 claim for attorney's fees. The Smiths did not present evidence that "no attorney's services were needed or that the services of [the Trust's] counsel had no value." *Cale's Clean Scene Carwash, Inc.,* 76 S.W.3d at 787. Moreover, it is undisputed from the evidence admitted at trial that some amount of attorney's services was necessary. *See Cale's Clean Scene Carwash, Inc.,* 76 S.W.3d at 787. Therefore, we conclude there is no evidence to support the jury's finding of no attorney's fees. *See Cale's Clean Scene Carwash, Inc.,* 76 S.W.3d at 787; *Brown v. Bank of Galveston, Nat'l Assoc.,* 930 S.W.2d 140, 145 (Tex.App.-Houston [14th Dist.] 1996), *aff'd,* 963 S.W.2d 511 (Tex. 1998).

We sustain the Trust's issue on cross-appeal and award the Trust attorney's fees of $47,438.75. *See Welch v. Hrabar,* 110 S.W.3d 601, 610 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) ("When an attorney's testimony regarding his fees is uncontroverted, clear, direct and positive, and not contradicted by any other witness or attendant circumstances, and there is nothing to indicate otherwise, and appellate court may, in the interest of judicial economy, render judgment for attorney's fees.") (citing *Ragsdale,* 801 S.W.2d at 882 and *World Help v. Leisure Lifestyles, Inc.,* 977 S.W.2d 662, 684, 686 (Tex.App.-Fort Worth 1998, pet. denied)).

We vacate that portion of the judgment awarding the Trust attorney's fees of $7500 and render judgment that the Trust take $47,438.75 in attorney's fees. In all other respects, we affirm the trial court's judgment.