**AFFIRMED and opinion filed December 12, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01103-CV**

**EXECUTIVE WORKSPACE–ABC–PRESTON ROAD, LLC A/K/A EXECUTIVE WORKSPACE–PRESTON ROAD, LLC; EXECUTIVE WORKSPACE, LLC; EXECUTIVE WORKSPACE–PRESTON TRAIL, LLC; EXECUTIVE WORKSPACE-HILLCREST, LLC; EXECUTIVE WORKSPACE-ABC-TOLLWAY, LLC; AND EXECUTIVE WORKSPACE-FRISCO STATION, LLC, Appellants**
**V.**
**RESERVE CAPITAL–PRESTON GROVE SPE, LLC, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-12900**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Garcia
Opinion by Justice Pedersen, III

A jury found all appellants violated the Texas Uniform Fraudulent Transfer Act (TUFTA) and that two appellants were part of a civil conspiracy. Appellants complain (1) there was no TUFTA "transfer," "asset," or "transferee" as a matter of law; (2) the evidence is legally insufficient to support the jury's award of actual damages; (3) the civil-conspiracy claim fails as a matter of law because it circumvents TUFTA's express requirements; (4) the award of exemplary damages

is not supported by actual damages; (5) the trial court abused its discretion in awarding attorney's fees to appellee; and (6) the trial court abused its discretion in taxing all costs against appellants. We affirm the trial court's judgment.

Background

Appellant Executive Workspace–ABC–Preston Road, LLC a/k/a Executive Workspace–Preston Road, LLC (Preston Road) leased office space from appellee Reserve Capital–Preston Grove SPE, LLC (Reserve Capital). Preston Road leased that same space and provided office-related services to its own lessees pursuant to written "licenses." In March 2018, Preston Road began to inform its licensees it intended to cease doing business. At that time, Preston Road's agreements with its licensees had not expired. Some of Preston Road's licensees subsequently arranged for office space and related services with other businesses owned by Preston Road's owner, appellant Executive Workspace, LLC (EW). These other EWS-owned businesses—which also are appellants in this lawsuit—are Executive Workspace–Preston Trail, LLC; Executive Workspace–Hillcrest, LLC; Executive Workspace–ABC–Tollway, LLC; and Executive Workspace–Frisco Station, LLC (EW's other centers). Preston Road permanently shut down operations at the end of July 2018 and vacated the building although its lease with appellee had not expired.

Appellee filed this lawsuit. Appellee's petition alleges as follows: EW owned and managed Preston Road. EW was unsatisfied with Preston Road's financial performance. Preston Road struggled to meet its financial obligations in Spring 2018

–2–

and likely was insolvent. EW and its other centers communicated with Preston Road's tenants to inform them Preston Road would cease operations and encouraged them to abandon their Preston Road leases and to sign leases with other EW centers. Appellee alleged claims for (1) breach of contract against Preston Road; (2) "fraudulent transfer—actual fraud" against all appellants; (3) "fraudulent transfer-constructive fraud" against all appellants; (4) "fraud-failure to disclose" against EW and Shawn L. Petersen, an alleged owner and manager of EW; (5) civil conspiracy against all appellants and Petersen; and (6) "constructive trust" against EW's other centers. Appellee sought attorney's fees.

Subsequently, the parties stipulated, "The sum of money, if paid now in cash, that would fairly and reasonably compensate [appellee] for its damages that resulted from [Preston Road's] failure to comply with the Lease is $533,347.00." They also stipulated, "The reasonable and necessary attorneys' [sic] fees incurred by [appellee] and associated with [appellee's] breach of contract claim against [Preston Road] is $33,000.00."

A jury heard the remainder of the case. The jury found (1) neither Petersen nor EWS committed fraud against appellee; (2) Preston Road transferred the licenses without receiving reasonably equivalent value and with actual intent to hinder, delay, or defraud a creditor; (3) EW and the other EW centers were transferees of the licenses or were persons for whose benefit the transfer of the licenses were made; (4) the monetary value of licenses transferred to EW and the other EW centers; (5)

–3–

EW and Preston Road were part of a conspiracy to transfer the licenses; (6) by clear and convincing evidence that monetary harm to appellee due to the transfer of licenses resulted from malice or fraud by EW; and (7) $61,606 in exemplary damages against EW. The trial court decided appellee's motion for attorney's fees and costs.

The trial court's final judgment awarded actual damages of $533,347 and reasonable and necessary attorney's fees of $33,000 from Preston Road pursuant to the above-described trial stipulations related to breach of lease. The final judgment awarded actual damages of $272,640, jointly and severally, against EW and Preston Road, with all other appellants jointly and severally liable "thereon" for lesser amounts, provided appellee could recover no more than $272,640 total actual damages. It awarded $61,060 in exemplary damages against EW. It awarded $276,450 in reasonable and necessary attorney's fees in favor of appellee and from all appellants, jointly and severally; contingent appellate attorney's fees from all appellants, jointly and severally; pre-judgment and post-judgment interest; and costs from all appellants, jointly and severally. It ordered that appellee take nothing from Petersen.

All defendants, except Petersen, filed a notice of appeal from the final judgment. This appeal followed.

## Standard of Review

When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding. *See Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014). Evidence is legally insufficient to support a jury finding when (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). In evaluating the legal sufficiency of the evidence to support a finding, we view the evidence in the light most favorable to the finding, indulging every reasonable inference supporting it. *See City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We "must credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* at 827. The "final test for legal sufficiency" is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.* Proper legal-sufficiency review prevents reviewing courts from substituting their opinions on credibility for those of the jurors. *See id.* at 817–18.

In reviewing the factual sufficiency of the evidence to support a jury finding for which the party did not have the burden of proof, we consider and weigh all of

the evidence and set aside the verdict only if the evidence that supports the finding is so weak as to make the verdict clearly wrong and manifestly unjust. *See Ins. All. v. Lake Texoma Highport, LLC*, 452 S.W.3d 57, 73 (Tex. App.—Dallas 2014, pet. denied) (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986)). We defer to the jury's implicit determinations of credibility and weight to be given to the evidence. *See Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 408 (Tex. App.—Dallas 2014, no pet.) (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)).

Construction of a statute presents a question of law, which we review de novo. *See TIC Energy & Chem., Inc. v. Martin*, 498 S.W.3d 68, 74 (Tex. 2016); *Fluor Corp. v. E.D.G.M.*, No. 05-19-00921-CV, 2022 WL 1222713, at *3 (Tex. App.—Dallas Apr. 26, 2022, no pet.) (mem. op.).

Assets Were Transferred, and Appellants were TUFTA Transferees
or Persons for whose Benefit Transfers were Made

In their first issue on appeal, appellants argue that as a matter of law, (1) no TUFTA "transfer" of an "asset" occurred and (2) no appellant was a TUFTA transferee or a person for whose benefit transfers were made.

1. Transfer of Assets

Initially, we address appellants' argument that the appellate record contains no evidence of a TUFTA transfer of an asset.

Jury question 1b asked, "Did [Preston Road] transfer any of the assets listed below without receiving reasonably equivalent value?" Jury question 1b instructed

the jury to "answer the following question as to 'Licenses' only." The jury answered, "Yes." The question contained a definition, which stated, "'Transfer means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." That jury definition closely tracks TUFTA's § 24.002(12), which defines "transfer" and provides,

> "Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance. . . .

TEX. BUS. & COM. CODE ANN. § 24.002(12).

In deciding whether a TUFTA transfer occurred, we first look to the plain and common language of § 24.002(12). *See Greenville Surgery Ctr., Ltd. v. Beebe*, 320 S.W.3d 850, 853 (Tex. App.—Dallas 2010, no pet.) (courts construe statutes by first looking to the plain and common meaning of the statute's words). We construe statutory language de novo. *See Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 491 (Tex. 2017); *Superior Indus., Inc. v. Kallus*, No. 05-23-00219-CV, 2024 WL 1089473, at *2 (Tex. App.—Dallas, Mar. 13, 2024, no pet.) (mem. op.). A reviewing court's goal is to determine and give effect to the legislature's intent. *See Pedernal Energy, LLC*, 536 S.W.3d at 491; *Superior Indus., Inc.*, 2024 WL 1089473, at *2. Courts construe statutes so that no part is surplusage, but so that

each word has meaning. *See Pedernal Energy, LLC*, 536 S.W.3d at 491; *Superior Indus., Inc.*, 2024 WL 1089473, at *2. We take statutes as we find them and refrain from rewriting text chosen by the legislature. *See Pedernal Energy, LLC*, 536 S.W.3d at 491.

The language of § 24.002(12) is broad. *See Hearne v. RiverSource Life Ins. Co.*, 670 S.W.3d 360, 370 (Tex. App.—Texarkana, 2023, pet. denied). That broad definition is designed to promote TUFTA's purpose of "prevent[ing] debtors from prejudicing creditors by improperly moving assets beyond their reach." *Id.* (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 566 (Tex. 2016)). The broad definition of transfer accomplishes that purpose by subjecting almost any form of conveyance a debtor attempts to make to the remedies provided by TUFTA. *See id.* The definition of transfer focuses on the debtor and its attempt to move its assets beyond the reach of creditors. *See id.*

Appellants first argue, "As a matter of law, no transfer could occur once the licenses terminated." They argue, "[W]hen a debtor's contract rights are at issue, *no transfer occurs '[w]hen a termination is pursuant to the terms of a contact.'*" (Emphasis added). However, appellants argue "all the licenses" terminated by operation of law when Preston Road ceased operations. They argue, "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." Appellants cite *Mustang Pipeline Co., Inc. v. Driver Pipeline Co.,*

*Inc.*, 134 S.W.3d 195, 196 (Tex. 2004). They argue, "An 'anticipatory' breach is a 'breach of the entire contract' for purposes of this rule." For this proposition, they cite *Murray v. Crest Construction, Inc.*, 900 S.W.2d 342, 344 (Tex. 1995) ("We have long recognized the rule of anticipatory breach: the repudiation of a contract before the time of performance has arrived amounts to a tender of breach of the entire contract and allows the injured party to immediately pursue an action for damages.").

Accordingly, appellants apparently concede Preston Road materially breached "all of the licenses" by ceasing operations. Consequently, we are not persuaded by appellants' assertion that the licenses terminated pursuant to their own terms and that such termination precluded transfer of the licenses. To the contrary, breach of contract occurs when a party fails to perform an act it has explicitly or impliedly promised to perform. *See Gaspar v. Lawnpro, Inc.*, 372 S.W.3d 754, 757 (Tex. App.—Dallas 2012, no pet.) (citing *Esty v. Beal Bank S.S.B.*, 298 S.W.3d 280, 299 (Tex. App.—Dallas 2009, no pet.)). And "material breach" of "all of the licenses" fails to support appellants' conclusion that the licenses were terminated pursuant to their own terms and thus could not have been transferred. We are unpersuaded by appellants' argument.

We must determine whether Preston Road's termination of the licenses was a "mode . . . of disposing of or parting with an asset or an interest in an asset . . . ." BUS. & COM. § 24.002(12). Appellants do not contest that the leases were assets prior to Preston Road's cessation of operations. They argue that "the parties to a

–9–

license 'own' an interest in that license[.]" They argue the licensees paid Preston Road monthly license fees. Indeed, appellants argue that Preston Road had possessed valuable rights under the licenses. The terms of the leases had not expired when Preston Road materially breached the leases and ceased doing business. Moreover, appellants argue that due to Preston Road's material breach of all the leases, Preston Road no longer had the right to payments pursuant to the leases. Consequently, following the above-described rules of statutory construction and the plain, broad language of TUFTA's § 24.002(12), we conclude Preston Road's material breach of "all of the licenses" constituted a TUFTA transfer, a "mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset." *Id*. § 24.002(12).

Second, appellants briefly argue that as a matter of law, Preston Road's clients were not an "asset" or "property" subject to "transfer" under TUFTA. An "asset" is "property of a debtor." *Id.* § 24.002(2).[1] "Property" means "anything that may be the subject of ownership." *Id.* § 24.002(10). Appellants argue, "[P]arties to the license do not own one another. Accordingly, those clients are not [Preston Road's]

---

[1] "Asset" under TUFTA does not include,

    (A) property to the extent it is encumbered by a valid lien;

    (B) property to the extent it is generally exempt under nonbankruptcy law; or

    (C) an interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant, under the law of another jurisdiction.

    Bus & Com. § 12.002(2)(A), (B), (C).

'property' as defined by TUFTA and cannot be the subject of a fraudulent transfer." Appellee responds that its theory has never been that Preston Road's clients were "assets" or "property" that were fraudulently transferred. Indeed, jury question 1b expressly pertained to transfer of "licenses." The jury charge generally defined "licenses": "'Licenses' as used herein refers to the license agreements between [Preston Road] and its licensees at the Premises." The question does not ask whether clients were transferred. Consequently, we conclude appellants' argument—that clients are not TUFTA assets or property subject to transfer—is not supported by the record.

Third, appellants argue that legal authority cited by appellees in the trial court is inapplicable. *See Hometown 2006-1 1925 Valley View, L.L.C. v. Prime Income Asset Mgmt., L.L.C.*, 847 F.3d 302, 308–09 (5th Cir. 2017) ("Waiver of the sixty-day notice period effected a transfer of the right to continued performance under the Agreements and receive the payments due thereunder, payments which had ascertainable value and were sufficiently vested to constitute 'assets' under TUFTA's broad definition of 'anything that may be the subject of ownership.'"). In their argument to distinguish that opinion, appellants argue, "As explained above, the licenses terminated as a matter of law when [Preston Road] ceased operations. When that happened, [Preston Road's] right to any future payments under the licenses also terminated, leaving behind no right to payment that could be transferred." However, we rejected that assertion by appellants when we concluded

–11–

above that legally sufficient evidence supported the jury's finding that Preston Road transferred assets pursuant to TUFTA. Consequently, we are not persuaded by that already rejected assertion as reason here to distinguish *Hometown 2006-1 1925 Valley View, L.L.C.*

We conclude the appellate record contains evidence that appellants transferred TUFTA assets.

2. <u>Transferees and Persons for whose Benefit Transfers were Made.</u>

Next, we address appellants' argument that as a matter of law, no appellant is a TUFTA transferee or person for whose benefit transfers were made.[2]

Jury question 1e asked, "Which of the following entities, if any, was a transferee of a License or a person for whose benefit the transfer of a License was made?" The jury answered "yes" for EW and all the other EW centers.

Section 24.009(b) of TUFTA provides,

(b) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under Section 24.008(a)(1) of this code, the creditor may recover judgment for the value of the asset transferred, as adjusted under Subsection (c) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

(1) the first transferee of the asset or the person for whose benefit the transfer was made . . . .

BUS. & COM. § 24.009(b)(1).

---

[2] TUFTA does not define the word "transferee." The jury charge defines "transferee" as "a person who receives a transferred asset." Appellants do not complain about that definition in this Court.

First, appellants argue, "[A]s a matter of law, [EW] is not a 'transferee' or a 'person for whose benefit the transfer was made' as defined by TUFTA." They argue, "TUFTA does not 'allow for recovery from a party who was not a direct or indirect recipient of a fraudulent transfer." They argue that TUFTA does not impose "derivative" liability such as vicarious liability based on theories such as civil conspiracy" or on a defendant's "mere status as a shareholder, officer, or director."[3]

Consequently, appellants argue, that to establish liability under TUFTA, a plaintiff must show some "independent benefit" to the defendant. They rely on *Janvey v. Libyan Investment Authority*, 840 F.3d 248, 266 (5th Cir. 2016). They argue "no evidence" shows EW received any "independent benefit" from the transfers, separate and apart from its status as a "shareholder/owner" of its EW centers.

Appellee responds that Texas judicial authority supports a conclusion that EW received an independent benefit due to transfer of the licenses. It relies on *Esse v. Empire Energy III, Ltd*., 333 S.W.3d 166 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) and *Citizens National Bank of Texas v. NXS Construction, Inc*., 387 S.W.3d 74, 84–85 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). In *Esse*, the court of appeals held,

---

[3] Appellee notes the jury found EW was a transferee or a person for whose benefit the transfer of a license was made. Appellee argues the jury's finding is relevant to direct TUFTA liability, not to derivative liability. We agree.

The trial court found that "Brent and Todd Esse assented to and benefited from these transfers." The uncontested evidence demonstrates that members of the Esse family were the only shareholders of both Westgate [transferor] and 5E [transferee], with Brent and Todd controlling the vast majority of the shares of both. Thus, *their actions resulted in more than just an incidental or indirect benefit* to them. Under the plain meaning of the statute, Brent and Todd Esse were both "person[s] for whose benefit the transfer was made."

*Esse*, 333 S.W.3d at 181 (emphasis added). In *Citizens National Bank of Texas*, the court of appeals concluded,

Strong evidence supports a finding that CNB was a person for whose benefit the transfer was made: CNB owned, but was required to sell, IQC; and *CNB approved the transfer* of Westex's lines to IQC for the purpose of increasing IQC's value. The transfer *directly benefited CNB because it increased the value of an entity owned by CNB* and which CNB needed to sell. Accordingly, we hold the evidence is legally and factually sufficient to support the jury's finding pertaining to CNB under Question 3.

*Citizen's Nat'l Bank of Tex.*, 387 S.W.3d at 85 (emphases added). The *Janvey* court summarized the rationale of these two Texas opinions, stating,

The *Esse* court determined that shareholders were transfer beneficiaries because *they had "'assented to and benefitted from these transfers' and knowingly participated in the wrongdoing."* . . . The *Citizens National Bank* court determined that a shareholder was a transfer beneficiary because *the shareholder was actually involved with the transfer.*

*Janvey v. Libyan Inv. Auth.*, 840 F.3d at 266 (footnotes omitted and emphases added).

Appellants rely exclusively on trial-court testimony of appellee's expert witness to support their argument that there is "no evidence" that EW received an "independent benefit" from the transfers. The expert testified, in part,

–14–

Q. And you're not aware of any direct benefit that Executive Workspace received [from the alleged transfer of licenses]?

A. Other than it owns – I mean, there's a chain of ownership, but, yeah, I understand what you're saying.

Q. Right. Their entities could have received a benefit, but [Parent EW] directly did not receive a benefit, right?

A. Yes.

However, in reviewing whether the jury's finding that EW was a TUFTA transferee, we do not consider only the above-quoted testimony. *See City of Keller*, 168 S.W.3d at 827 (a court reviewing the appellate record to determine legal sufficiency of the evidence to support the verdict begins by considering all the evidence or the evidence supporting the verdict).

In support of its argument that the transfers resulted in an independent benefit to EW, appellee argues EW was financially struggling when the licenses were transferred. Appellee argues EW closed an also-struggling Preston Road and transferred Preston Road's licensees to other EW centers to benefit EW's financial situation. Consequently, appellee argues, EW was a person for whose benefit the transfer was made pursuant to TUFTA, *Esse*, and *Citizen's National Bank of Texas.*

EW's Petersen testified as follows: He owned 96 percent of EW and was its manager. EW wholly owned and managed Preston Road and the other centers. In 2018, Preston Road's occupancy rate was 50 percent and lost money "from the day we bought it," including every month between January 2018 and July 2018. Preston

Road and "the company, EWS, as a whole" were struggling financially and losing money. He acknowledged that "the company" was "cash-flow negative, under water." Petersen testified that in May 2018, he decided to stop doing business at Preston Road.

The appellate record contains EW internal emails. In a January 31, 2018 email from Erica Fahti, EW's controller, to Peterson and to Brenda EW's chief operating officer, Fahti projected EW would lose almost $1 million in 2018. Fahti characterized Preston Road as "weak" and projected Preston Road would alone lose $158,631 in 2018. In another January 31, 2018 email, Fahti informed Petersen and Hesse, "We have 7 centers that even at full capacity would not be able to break even as things stand right now." She included Preston Road as one of the seven centers and said of Preston Road, "I'm increasingly concerned about the results I'm finding at this location." In a February 6, 2018 email to Petersen and Hesse, Fahti stated Preston Road continued to underperform. Then, on May 18, 2018, Fathi emailed to Petersen, "Attached is what April would have looked like with no [Preston Road] and moving 20 lowest clients to [two other EW centers]." On May 20, 2018, Fathi emailed to Petersen that "changes" with Preston Road and another center would result in "$2M negative before profitability." Petersen responded EW would "go neg by $3.21" before becoming profitable. Petersen asked whether he needed to plan to fund "an additional $1.3–1.5 to carry us through?" On May 19, 2018, Petersen

emailed to Fahti, providing financial projections for EW if Preston Road and another EW center were shut down. Petersen's email, verbatim, follows:

> **COLUMS ON THE RIGHT:** (include removing Preston Road & [another EW center])
>
> **Scenario #1:** I feel like this is a low conservative projection and very realistic
> Adding 11 offices per month, breakeven will be about 17 months
>     Maybe longer, because this DOES NOT include rent increases
> Breakeven looks to be about 60–65% Occupancy
> We will go neg about $2MM
> M, but will hit a $3MM EBITDA in 36 months
>
> **Scenario #2:** I think this is worst case and very unlikely
> Adding only 6 offices per month
> Breakeven looks to be about 60–65% Occupancy
> Breakeven in 24–28 months & will go neg about $2.8MM, (DOES NOT include rent increases)

On June 8, 2018, Petersen informed Fathi and Hesse by email, "[W]e are planning to close [Preston Road] on either end of June or July . . . ."

Becky Gullage, an EW regional manager testified that Preston Road was performing badly. She saw financial documents that demonstrated the effect on EW and on other centers if a number of former Preston Road licensees moved to other EW centers. She testified Hesse asked her to speak with licensees about relocating to a different EW center. She spoke with licensees about transferring their licenses. She testified it was EW's goal to relocate as many of the Preston Road licensees as possible to offices in other EW centers. She testified EW offered licensees financial concessions to relocate at other EW centers, such as providing increased office space

without increasing lease payments and paying moving expenses. She testified she was able to convince at least sixteen of Preston Road's licensees to move to other EW centers before Preston Road ceased doing business. Moreover, Petersen testified Preston Road closed its doors for business at the end of July 2018.

In sum, the appellate record contains evidence that EW was the sole owner and manager of Preston Road and the other EW centers. EW conceived of and took action in the closing of Preston Road and the transferring of Preston Road licenses to other EW centers. EW did so in order to strengthen its financial position and that of other EW centers. Consequently, the record contains evidence EW received an independent benefit from the transfer of the licenses, contrary to appellants' assertions. *See Citizen's Nat'l Bank of Tex.*, 387 S.W.3d at 85; *Esse*, 333 S.W.3d at 18; *see also* BUS. & COM. § 24.009(b)(1).

Additionally, appellants argue that as a matter of law the other EW centers are not transferees or persons for whose benefit the transfer was made pursuant to TUFTA. Specifically, they argue the other EW centers were not transferees of an asset because there is no evidence of a transaction between Preston Road and EW's other centers in which Preston Road "assigned, or otherwise transferred any licenses from [Preston Road] to [another EW center]." Additionally, they argue there is no evidence demonstrating that any other EW center took over rights and obligations of the Preston Road licensees "by assignment or other contractual agreement."

However, TUFTA's broad definition of "transfer" subjects almost any form of conveyance a debtor attempts to make to the remedies provided by TUFTA. *See Hearne*, 670 S.W.3d at 370 (also stating TUFTA's broad definition of transfer focuses on the debtor and its attempt to move its assets beyond the reach of creditors). Indeed, TUFTA defines "transfer" as including "every mode, direct or indirect . . . of disposing of or parting with an asset or an interest in an asset . . . .). *See* BUS. & COM. § 24.002(12). The jury charge contained a definition of "transfer" that closely tracked TUFTA's definition.

Consequently, appellants' focus on the absence of (1) an assignment or (2) a contract expressly evidencing a transfer is too narrow to negate as a matter of law a "transfer"—as TUFTA broadly defines the word. *See id.*; *Hearne*, 670 S.W.3d at 370; *see also Hometown 2006-1 1925 Valley View, L.L.C.*, 847 F.3d at 305 (old agreements terminated, new agreements entered).

Moreover, contrary to appellants' assertion, the record contains legally sufficient evidence that the other EW centers "took over"—as appellants put it— rights and obligations previously performed at Preston Road. Evidence thereof is provided by emails of Petersen and Fahti and testimony of Petersen and Gullage. We describe that evidence in detail above.

Additionally, that the other EW centers "took over" those rights by—in part— employing "new" contracts is not determinative of whether the other EW centers were TUFTA transferees. *See Hearne*, 670 S.W.3d at 370 (TUFTA's definition of

–19–

transfer reaches almost any form of a transaction used to put assets beyond the reach of a creditor); *and see* BUS. & COM. § 24.002(12) (broadly defining "transfer).

We conclude the appellate record contains evidence that EW and its other centers were TUFTA transferees or persons for whose benefit a transfer was made.

We overrule appellant's first issue on appeal.

<u>Legally Sufficient Evidence Supports TUFTA Damages</u>

In their second issue on appeal, appellants complain the evidence is legally insufficient to support the award for actual damages.

Remedies under TUFTA for a fraudulent transfer generally include (1) avoidance of the transfer to the extent necessary to satisfy the creditor's claim; (2) an attachment or other provisional remedies in accordance with Texas law; (3) other equitable remedies such as injunctions and appointment of receivers; or (4) pursuant to court order, execution by a judgment creditor on an asset transferred or its proceeds. *Id*. § 24.008; *Qui Phuoc Ho v. MacArthur Ranch, LLC*, 395 S.W.3d 325, 334 (Tex. App.—Dallas 2013, no pet.). Under § 24.009(b) of TUFTA, a plaintiff may recover judgment for the value of the asset transferred, as adjusted . . . or the amount necessary to satisfy its claim, whichever is less. *See* BUS. & COM. § 24.009(b); *Qui Phuoc Ho*, 395 S.W.3d at 334. If the judgment is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require. *See* BUS. & COM. § 24.009(c)(1).

Appellants first argue,

> [Appellee] presented no evidence of the "value" of [Preston Road's] licenses at the time of their alleged transfer. The reality is that those licenses had no value at the time of their alleged transfer. *As shown above*, those licenses terminated when [Preston Road] stopped operating, making the licenses worthless because the clients no longer had any obligation to continue paying [Preston Road].

(Emphasis added.) However, we previously rejected appellants' argument concerning termination of the licenses. Consequently, that rejected argument does not support appellants' argument that the licenses had "no value."

Additionally, appellants argue no evidence supports the jury's answer concerning TUFTA damages because appellee's expert witness did not determine the value of Preston Road's licenses at the time of their alleged transfer. Appellants argue that evidence of value of the licenses of former Preston Road licensees at the other EW centers is no evidence of the value of the transferred Preston Road licenses. However, appellants fail to cite a judicial opinion or a TUFTA provision suggesting appellee's damages evidence was legally insufficient. *See* TEX. R. APP. P. 38.1(i); *Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex. App.—Dallas 2010, no pet.) (this Court is not responsible for doing legal research that might support a party's contentions). We conclude appellant's argument is without legal basis.

We overrule appellants' second issue on appeal.

Appellee's Conspiracy Claim does not Fail as a Matter of Law

In their third issue on appeal, appellants first argue that because appellee's fraudulent-transfer claim fails as a matter of law, its conspiracy claim also fails. They argue none of the appellants can be found liable for a conspiracy to do something that is not, itself, unlawful. *See W. Fork Advisors, LLC v. SunGard Consulting Servs., LLC*, 437 S.W.3d 917, 921 (Tex. App.—Dallas 2014, pet. denied) (". . . West fork is unable to establish that any named defendant is liable for an underlying tort. In the absence of such liability, West Fork's conspiracy claim must fail."). However, we concluded above that evidence supports every jury answer on TUFTA liability that appellants challenge in this Court. Consequently, appellants' first argument concerning conspiracy fails.

Second, appellants argue the civil-conspiracy claim fails as a matter of law because neither EW nor the other EW centers are transferees or recipients of Preston Road's licenses.[4] In particular, appellants argue, "[A] creditor could not use a conspiracy claim to broaden the scope of fraudulent-transfer liability, because that 'would essentially render meaningless' the statutory limitations on that liability." They quote *Mack v. Newton*, 737 F.2d 1343, 1361 (5th Cir. 1984). However, the jury's conspiracy answer did not "broaden the scope of fraudulent-transfer liability" of appellants. TUFTA's § 24.009(b)(1) authorizes a creditor to recover judgment for

---

[4] The jury's conspiracy question did not involve the other EW centers. Rather, it asked whether EW or Preston Road were part of a conspiracy. The jury answered "yes" to each.

the value of the asset transferred, subject to adjustments, from "the person for whose benefit the transfer was made[.]" BUS. & COM. § 24.009(b)(1). The jury found EW was "a transferee of a License or a person for whose benefit the transfer of a License was made[.]" We concluded above that evidence supported a finding that EW was a person for whose benefit the transfer was made. The jury found the value of the transferred licenses to be $272,640 as to EW and so found prior to answering the conspiracy question. Moreover, the trial court's final judgment awarded appellee $272,640 in actual damages against EW—the same amount the jury attributed to EW under appellee's TUFTA claim. Accordingly, appellants' argument that the jury's conspiracy answer somehow "broaden[ed] the scope of fraudulent-transfer liability" is unfounded.

We overrule appellants' third issue on appeal.

### The Record Supports the Award of Exemplary Damages

In their fourth issue on appeal, appellants argue the award of exemplary damages fails because without recovery of actual damages, plaintiffs may not recover exemplary damages. *See Burbage v. Burbage*, 447 S.W.3d 249, 263 (Tex. 2014) ("A party may not recover exemplary damages unless the plaintiff establishes actual damages."); *Radiant Fin., Inc. v. Bagby*, No. 05-16-00268-CV, 2017 WL 2927825, at *6 (Tex. App.—Dallas July 10, 2017, pet. denied) (mem. op.). However, we concluded above that evidence supports the jury's finding on actual damages. Appellant makes no other argument concerning exemplary damages.

–23–

We overrule appellants' fourth issue on appeal.

Attorney's Fees

In their fifth issue on appeal, appellants complain the trial court abused its discretion by awarding attorney's fees to appellee.

The trial court granted appellee's "motion for attorney's fees under TUFTA." It awarded $276,450 for attorney's fees through trial and completion of proceedings in the trial court, plus $101,750 for appeals, for a total of $378,200. The trial court's judgment held all defendants, except Petersen, jointly and severally liable for the attorney's fees.

Section 24.013 of TUFTA provides that "the court may award . . . reasonable attorney's fees as are equitable and just." BUS. & COM. § 24.013. "This provision of TUFTA gives the trial court the sound discretion to award attorney's fees based on the evidence the trial court heard." *Walker v. Anderson*, 232 S.W.3d 899, 919 (Tex. App.—Dallas 2007, no pet.); *see Yamin v. Carroll Wayne Conn, L.P.*, 574 S.W.3d 50, 69 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (courts review an award of attorney's fees under § 24.013 of TUFTA for abuse of discretion). A trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

First, appellants argue the trial court abused its discretion by not reducing the "lodestar" amount of attorney's fees because appellee recovered less in damages than it sought. They argue appellee's expert witness testified to $1,425,057 in total

–24–

damages including interest, but the final judgment awarded appellee $272,640 in actual damages and $61,060 in exemplary damages. They argue appellee received approximately seventy-five percent of the amount it requested for attorney's fees. Appellants argue the trial court failed to give "appropriate weight" to the monetary results appellee achieved at trial.

Appellants cite two Texas judicial opinions in support of their argument that the trial court abused its discretion based solely on its application of the "results obtained" factor. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812 (Tex. 1997); *and see Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545 (Tex. 2009). However, *Arthur Andersen & Co.* did not involve TUFTA or an argument that the "results obtained" factor required a reduction of attorney's fees. *See Arthur Andersen & Co.*, 945 S.W.2d at 819 (holding that to recover attorney's fees under the Texas Deceptive Trade Practices-Consumer Protection Act, the plaintiff must prove that the amount of attorney's fees was both reasonably incurred and necessary to the prosecution of the case at bar, and must ask the jury to award the fees in a specific dollar amount, not as a percentage of the judgment). We conclude that *Arthur Anderson & Co.* does not support appellants' assertion that the trial court abused its discretion.

Nor was *Smith* a TUFTA case. *See Smith*, 296 S.W.3d at 546 (breach of contract). In *Smith,* a trust sought damages of $215,931.50 and attorney's fees through trial of $47,438.75. *See id.* at 546. The jury awarded $65,000 damages but

no attorney's fees. *See id.* The trial court rendered judgment notwithstanding the verdict and awarded plaintiff $7,500 for attorney's fees incurred through trial and up to $15,000 in attorney's fees for successful appellate proceedings. *See id.* at 546–47. This Court determined that the trust was entitled to the full amount of attorney's fees it sought, $47,438.75, because it proved that amount as a matter of law. *See Smith v. Patrick W.Y. Tam Trust*, 235 S.W.3d 819, 828 (Tex. App.—Dallas 2007) ("Because the Trust presented competent, uncontroverted evidence of its right to attorney's fees and because the Smiths did not challenge the amount, nature, or necessity of these fees, we conclude the trial judge abused his discretion in awarding $7500."), *rev'd*, 296 S.W.3d 545 (Tex. 2009). The supreme court determined that because the jury had awarded the trust far less damages than the trust sought, there was a fact question whether $47,438.75 was a reasonable attorney's fee. *See Smith*, 296 S.W.3d at 548. The supreme court concluded, "the fee is unreasonable in light of the amount involved and the results obtained." *Id.* That is one of eight *Arthur Andersen & Co.* non-exclusive factors. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. The unreasonableness of that one factor meant the amount of attorney's fees was not established as a matter of law and that the amount had to be determined by a jury. *See Smith*, 296 S.W.3d at 548. The court observed that although the amount the court of appeals awarded was unreasonable under one factor, on retrial, the jury could award a similar amount. *See id.*; *Sandberg v. STMicroelectronics, Inc.,* 600 S.W.3d 511, 534 (Tex. App.—Dallas 2020, pet. denied) (distinguishing *Smith*).

The present lawsuit is distinguishable from *Smith.* Here, it was the judge as finder of fact who determined the reasonable amount of attorney's fees, not the trial court ruling as a matter of law and awarding attorney's fees despite a jury answer awarding no fees. *See Smith*, 296 S.W.3d at 548. Additionally, the fact that one of the eight *Arthur Andersen & Co.* factors does not support the full amount of attorney's fees requested does not mean that the totality of evidence supporting other factors does not support that amount. *See Sandberg*, 600 S.W.3d at 534. Because appellants fail to address the other *Arthur Andersen & Co.* factors, we cannot conclude that the trial court's award of attorney's fees was an abuse of discretion. *See id.*

In this case, appellee supported its motion for attorney's fees with evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services. Consequently, appellee presented sufficient evidence of the base lodestar calculation of reasonable and necessary attorney's fees. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). Appellants had the burden of providing specific evidence to overcome the presumptive reasonableness of the base lodestar figure. *See id.* at 501. For reasons stated above, we conclude appellants failed to carry their burden. *See Rohrmoos Venture*, 578 S.W.3d at 500. We are not persuaded by appellants' argument that the

trial court abused its discretion due to a failure to give appropriate weight to the *Arthur Andersen & Co.* factor of "the amount involved and the results obtained."

Second, appellants argue the trial court's award of attorney's fees does not adequately segregate fees on unrecoverable claims. They argue attorney's fees are only recoverable to the extent they were incurred on appellee's claim for fraudulent transfer of the licenses. However, appellants fail to cite legal authority to support their argument. *See* TEX. R. APP. P. 38.1(i); *Bolling*, 315 S.W.3d at 895 (this Court is not responsible for doing legal research that might support a party's contentions). Consequently, appellants fail to provide a legal basis to demonstrate the trial court abused its discretion in its award of attorney's fees due to a failure to segregate fees.

We overrule appellant's fifth issue on appeal.

### Costs

In their sixth issue on appeal, appellants argue the trial court abused its discretion by awarding costs to appellee. They argue appellee lost all its contested claims at trial except for its fraudulent transfer of licenses and related conspiracy claims and recovered less than one-third of the damages it sought.

Section 24.013 of TUFTA provides, "[T]he court may award costs . . . as are equitable and just." BUS. & COM. § 24.013. Appellants cite Rule 131 of the Texas Rules of Civil Procedure. Rule 131 provides, "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided." TEX. R. CIV. P. 131.

A "successful party" is one who obtains a judgment from a competent court vindicating a civil claim of right. *See, e.g., Hasty, Inc. v. Inwood Buckhorn Joint Venture,* 908 S.W.2d 494, 502 (Tex. App.—Dallas 1995, writ denied). A plaintiff who prevails on one claim but not others in the same suit is a successful party. *See Richman Trs. v. Time*, No. 05-00334-CV, 2024 WL 510339, at *18 (Tex. App.—Dallas June 24, 2024, no pet.) (mem. op.); *Hasty, Inc.,* 908 S.W.2d at 503 (plaintiff that prevailed on one out of three claims against defendant was a successful party for purposes of rule 131). The decision to assess costs is within the trial court's discretion. *See Hasty, Inc.*, 908 S.W.3d at 502. Absent an abuse of discretion, we will not reverse the trial court's assessment of costs. *See id.*

Appellee prevailed on its TUFTA claim. Consequently, we conclude appellee was a successful party as contemplated by rule 131 even though it did not prevail on every claim it asserted. *See Richman Trs.*, 2024 WL 510339, at *18; *Hasty, Inc.,* 908 S.W.2d at 503. We also conclude the trial court's award of costs was not an abuse of discretion.

We overrule appellant's sixth issue on appeal.

## Conclusion

We affirm the trial court's judgment.

221103f.p05

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

EXECUTIVE WORKSPACE–ABC–
PRESTON ROAD, LLC A/K/A
EXECUTIVE WORKSPACE
PRESTON ROAD, LLC;
EXECUTIVE WORKSPACE, LLC;
EXECUTIVE WORKSPACE–
PRESTON TRAIL, LLC;
EXECUTIVE WORKSPACE-
HILLCREST, LLC; EXECUTIVE
WORKSPACE-ABC-TOLLWAY,
LLC; AND EXECUTIVE
WORKSPACE-FRISCO STATION,
LLC, appellants

On Appeal from the 101st Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-18-12900.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Garcia participating.

No. 05-22-01103-CV          V.

RESERVE CAPITAL–PRESTON
GROVE SPE, LLC, appellee

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee RESERVE CAPITAL–PRESTON GROVE SPE, LLC recover its costs of this appeal from appellants EXECUTIVE WORKSPACE–ABC–PRESTON ROAD, LLC A/K/A EXECUTIVE WORKSPACE–PRESTON ROAD, LLC; EXECUTIVE WORKSPACE, LLC; EXECUTIVE WORKSPACE–PRESTON TRAIL, LLC; EXECUTIVE WORKSPACE-HILLCREST, LLC; EXECUTIVE WORKSPACE-ABC-TOLLWAY, LLC; AND EXECUTIVE WORKSPACE-FRISCO STATION, LLC.

Judgment entered this 12th day of December, 2024.